IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 11-cv-00135-PAB-KLM

AMEC EARTH AND ENVIRONMENTAL, INC.,

    Plaintiff,

v.

SOLSOURCE ENERGY SOLUTIONS, LLC,

    Defendant.

## ORDER

This matter is before the Court on the Motion for Default Judgment [Docket No. 48] filed by plaintiff AMEC Earth and Environmental, Inc. Plaintiff requests that the Court enter judgment by default against defendant SolSource Energy Solutions, LLC ("SolSource").

In order to obtain a judgment by default, a party must follow the two-step process described in Federal Rule of Civil Procedure 55. First, it must seek an entry of default from the Clerk of the Court under Rule 55(a). Second, after default has been entered by the Clerk, the party must seek default judgment according to the strictures of Rule 55(b). *See Williams v. Smithson*, 1995 WL 365988, at *1 (10th Cir. June 20, 1995) (citing *Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981)). In this case, the Clerk of the Court entered default against SolSource on September 30, 2011 [Docket No. 47]. Plaintiff now seeks entry of judgment by default pursuant to Rule 55(b).

The decision to enter default judgment is "'committed to the district court's sound discretion.'" *Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1124 (10th Cir. 2003) (citation omitted). When exercising that discretion, the Court considers that "[s]trong policies favor resolution of disputes on their merits." *Ruplinger v. Rains*, 946 F.2d 731, 732 (10th Cir. 1991) (quotation marks and citations omitted). "The default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party." *Id*. It serves to protect a plaintiff against "interminable delay and continued uncertainty as to his rights." *Id*. at 733. When "ruling on a motion for default judgment, the court may rely on detailed affidavits or documentary evidence to determine the appropriate sum for the default judgment." *Seme v. E & H Prof'l Sec. Co., Inc.*, No. 08-cv-01569-RPM-KMT, 2010 WL 1553786, at *11 (D. Colo. Mar. 19, 2010).

SolSource has not sought relief from the entry of default or otherwise attempted to participate in this litigation. SolSource may not simply sit out the litigation without consequence. *See Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444-45 (10th Cir. 1983) ("[A] workable system of justice requires that litigants not be free to appear at their pleasure. We therefore must hold parties and their attorneys to a reasonably high standard of diligence in observing the courts' rules of procedure. The threat of judgment by default serves as an incentive to meet this standard."). One such consequence is that, upon the entry of default against defendant, the well-pleaded allegations in the complaint are deemed admitted. *See Olcott*, 327 F.3d at 1125; *see also* 10A Charles Wright, Arthur Miller & Mary Kane,

Federal Practice & Procedure § 2688 (3d ed. 2010). "Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." 10A Wright & Miller § 2688, at 63.

AMEC's claims arise out of the construction of a photovoltaic array ("PV array").[1] On July 14, 2009, AMEC secured a contract with the Department of the Air Force, Air Education and Training Command to build a PV array. Docket No. 1 at 3, ¶ 10. On July 21, 2009, AMEC signed a subcontract with SolSource wherein SolSource agreed to build the PV array in accordance with industry standards and to fix or replace any deficient work. *Id*. at 3-4, ¶¶ 13-14. The subcontract included a defective work clause wherein SolSource contracted to: (1) perform all work according to accepted industry practice reflecting SolSource's best professional knowledge and judgment; (2) incur all expenses to re-perform or procure work AMEC deemed inadequate or insufficient; (3) pay all costs of any correction needed, including compensation for additional services; and (4) pay for all direct and indirect costs of removing and replacing defective or rejected work. Docket No. 48-2 at 11, ¶ 26. In addition, the subcontract called for SolSource to indemnify AMEC for all liability, claims, damages, fees, fines, expenses, and costs resulting from SolSource's performance in the construction of the PV array. *Id*. at 15, ¶ 37.

---

[1] A photovoltaic device, also known as a solar cell, converts a light source into an electrical current. *See generally* David Redfield, *Photovoltaics: An Overview,* 3 Solar L. Rep. 217, 218-19 (1981). A photovoltaic array is a series of connected photovoltaic devices. *Id*.

AMEC alleges that SolSource negligently constructed the PV array and refused to cure deficiencies pursuant to the terms of the subcontract. Docket No. 1 at 7, ¶ 33. AMEC alleges that SolSource breached the terms of the subcontract when it (1) assembled the foundation of the PV array with structural deficiencies, (2) completed only 60% of the PV array's electrical systems, and (3) installed defective wiring in the PV array's electrical system leading to a fire. *Id*. at 13-15. Moreover, AMEC contends that, despite providing SolSource with timely invoice payments, SolSource failed to compensate lower tier subcontractors. *Id*. at 10-11, ¶¶ 55-57. According to James Shepard, AMEC's Vice President, because of SolSource's breach of the subcontract and failure to compensate lower tier subcontractors, AMEC incurred a total of $1,083,187.67 in damages. Docket No 48-10 at 3, ¶ 8. This amount includes $770,965.01 in unpaid fees to SolSource's subcontractors, Docket No. 48-11, $53,291.80 in unpaid wages to SolSource's employees, Docket No. 48-12, and $258,930.86 in costs to cure SolSource's allegedly negligent construction. Docket No. 48-10 at 2, ¶ 6.

In its complaint, AMEC brought claims against SolSource for breach of contract, negligence, indemnification, breach of fiduciary duty, and civil theft. *See* Docket No. 1. On October 26, 2011, after securing a Clerk's Entry of Default [Docket No. 47], AMEC asked for a judgment of default against SolSource and sought $2,625,117.69 in damages and $91,300.68 in attorneys' fees. Docket No. 48 at 5, ¶¶ 21, 23. AMEC's total damages figure consists of the following: (1) $258,930.86 in damages to cure the PV array's deficiencies, *id*. at 6, ¶ 1; (2) $53,291.80 in damages for paying the wages of SolSource's employees, *id*. at ¶ 2; and (3) $2,312,895.03 in treble damages (i.e.,

$770,965.01 X 3) based on SolSource's non-compliance with the Colorado Trust Fund Statute, Colo. Rev. Stat. § 38-22-127, and Colorado's civil theft statute, Colo. Rev. Stat. § 18-4-401 *et seq*. *Id*. at ¶¶ 3-6.

On February 22, 2012, the Court granted defendant Jeffrey R. Scott's motion to dismiss [Docket No. 33] AMEC's claims for breach of fiduciary duty and civil theft. *See* Docket No. 49. In that order, the Court held that AMEC does not have standing to pursue a claim against SolSource under the Colorado Trust Fund statute. *See* Docket No. 49 at 12-13. The Court also dismissed plaintiff's civil theft claim because it relied on SolSource's actions in connection with the Trust Fund statute. *Id*. Consequently, AMEC's only remaining claims against SolSource are those for a breach of contract, negligence, and indemnification.

In its motion for default judgment, AMEC relies on both contract and tort law to recover damages for curing SolSource's negligent construction and the costs associated with compensating SolSource's employees. Docket No. 48 at 6, ¶¶ 1-2. This request, however, raises issues with respect to the economic loss rule[2] and the

---

[2]The economic loss rule states that a party suffering only economic loss from the breach of a contractual duty may not assert a tort claim absent an independent duty of care under tort law. *Town of Alma v. AZCO Constr., Inc.*, 10 P.3d 1256, 1259 (Colo. 2000). A claim is considered independent when two conditions are satisfied: "[f]irst, the duty must arise from a source other than the relevant contract"; and "[s]econd, the duty must not be a duty also imposed by the contract." *Haynes Trane Serv. Agency, Inc. v. Am. Standard, Inc.*, 573 F.3d 947, 962 (10th Cir. 2009). The Colorado Supreme Court has identified three policy reasons to support the application of the economic loss rule between commercial parties: (1) maintaining the distinction between contract and tort law; (2) enforcing expectancy interests of the parties so that they can reliably allocate risks and costs during bargaining; and (3) encouraging parties to build cost considerations into contracts since they will not recover economic damages in tort. *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 72 (Colo. 2004). The economic loss rule would be implicated in this case because the subcontract requires that SolSource

5

doctrine of election of remedies.[3]  In addition, AMEC seeks treble damages for SolSource's failure to pay its lower tier subcontractors pursuant to the Colorado Trust Fund Statute and the civil theft statute.  *Id*. at 6, ¶ 6.  Because the Court dismissed the Trust Fund statute, AMEC cannot recover payments it made to SolSource's lower tier subcontractors pursuant to that statute.  Moreover, AMEC may not recover treble damages pursuant to the civil theft statute without showing that SolSource had an independent legal duty not included in the subcontract.  *See Makoto, USA, Inc. v. Russell*, 250 P.3d 625, 628-29 (Colo. App. 2009) (economic loss rule bars a claim for civil theft unless theft claim is independent of the contractual terms).  Given that the Court dismissed two of AMEC's claims for relief after AMEC filed its motion for default judgment, the Court will reserve ruling on the motion and allow AMEC to elect specific remedies for its damage requests.

AMEC also requests an award for attorneys' fees pursuant to the subcontract. Docket No. 48 at 6, ¶ 4.  AMEC, however, has not complied with Rule 54(d)(2) of the

---

perform "in a competent manner [that] reflect[s] Subcontractor's best professional knowledge, judgment and accepted industry practice."  Docket No. 48-2 at 11, ¶ 26. Given this contractual language, AMEC has not identified an independent duty for its negligence claim that is not included in the contract.

[3]The election of remedies doctrine exists in Colorado to prevent a plaintiff from recovering twice for the same wrong, *Stewart v. Blanning*, 677 P.2d 1382, 1383-84 (Colo. App. 1984), to prevent jury confusion and promote judicial efficiency, *Kline Hotel Partners v. Aircoa Equity Interests, Inc.*, 729 F. Supp. 740, 743 (D. Colo. 1990), and to preclude the assertion of mutually inconsistent remedial theories on the same set of facts, *Kalish v. Brice*, 315 P.2d 829, 831 (Colo. 1957).  Here, the assertion of mutually inconsistent remedial theories may be at issue because AMEC relies on both contract and tort theories for recovery.  *But see Trimble v. City & Cnty. of Denver*, 697 P.2d 716, 723 (Colo. 1985)*, superseded by statute on other grounds by* §§ 24-10-101 *et seq.*, (allowing claims for breach of an employment agreement and fraud to proceed because they were based on a consistent theory of recovery).

6

Federal Rules of Civil Procedure or D.C.COLO.LCivR 54.3.  Therefore, the Court denies AMEC's request for attorneys' fees without prejudice.

For the foregoing reasons, it is

**ORDERED** that, on or before Friday, August 24, 2012, AMEC shall submit a supplemental brief electing remedies and addressing the potential implications of Colorado's economic loss rule.

DATED August 16, 2012.

BY THE COURT:

 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge